Kristine M. Akland
AKLAND LAW FIRM, PLLC
PO Box 7274
Missoula, MT 59807
(406) 544-9863
aklandlawfirm@gmail.com

Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES and NATIVE ECOSYSTEMS COUNCIL<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, and UNITED STATES FISH & WILDLIFE SERVICE,<br><br>　　　　Defendants. | CV-2019-92-M-DWM<br>CV-2019-102-M-DWM<br><br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR WILLOW CREEK PROJECT** |

**I. INTRODUCTION**

1.  This is a civil action for judicial review under the citizen suit provision of the Endangered Species Act and the Administrative Procedure Act which stems from the U.S. Forest Service's (Forest Service)and U.S. Fish and Wildlife Service's (FWS) authorizations, analyses, and lack thereof on the Helena National Forest (Forest) related to and regarding the Decision Memorandum and Categorical Exclusion for the Willow Creek Vegetation Management Project (Project).

2.  Plaintiffs Alliance for the Wild Rockies and Native Ecosystem Council attest that the decisions approving the challenged authorizations, analyses, and lack thereof are arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.

3.  Defendants' actions or omissions violate the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4331 *et seq.*, the National Forest Management Act (NFMA), 16 U.S.C. § 1600 *et seq.*, the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*

4.  Plaintiffs request that the Court set aside the Project pursuant to 5 U.S.C. §706(2)(A) and 16 U.S.C. §1540(g) and enjoin implementation of the Project.

5.      Plaintiffs seek a declaratory judgment, injunctive relief, the award of costs

and expenses of suit, including attorney and expert witness fees pursuant

to the Equal Access to Justice Act, 28 U.S.C. §2412, and the Endangered

Species Act, 16 U.S.C. §1540(g)(4), and such other relief this Court

deems just and proper.

## II.      JURISDICTION

6.      This action arises under the laws of the United States and involves the

United States as a Defendant. Therefore, this Court has subject matter

jurisdiction over the claims specified in this Complaint pursuant to 28

U.S.C. §§1331, 1346.

7.      An actual controversy exists between Plaintiffs and Defendants.

Plaintiffs' members use and enjoy the Helena National Forest for hiking,

fishing, hunting, camping, photographing scenery and wildlife, and

engaging in other vocational, scientific, spiritual, and recreational

activities. Plaintiffs' members intend to continue to use and enjoy the area

frequently and on an ongoing basis in the future.

8.      The aesthetic, recreational, scientific, spiritual, and educational interests of

Plaintiffs' members have been and will be adversely affected and

irreparably injured if Defendants implement the Project. These are actual,

concrete injuries caused by Defendants' failure to comply with mandatory

duties under NEPA, NFMA, ESA, and the APA. The requested relief would redress these injuries and this Court has the authority to grant Plaintiffs' requested relief under 28 U.S.C. §§2201 & 2202, and 5 U.S.C. §§705 & 706.

9.      Plaintiffs sent a notice of intent to sue under the ESA on June 14, 2019. Thus, Plaintiffs have complied with the 60 day notice requirement for claims under the ESA and this Court has jurisdiction to review Plaintiffs' ESA claims.

10.     Plaintiffs submitted timely written comments concerning the Project in the available administrative review process, thus they have exhausted administrative remedies. Therefore, the Court has jurisdiction to review Plaintiffs' APA claims.

### III.    VENUE

11.     Venue in this case is proper under 28 U.S.C. §1391(e) and LR 3.3(a)(1). Defendant Marten resides within the Missoula Division of the United States District Court for the District of Montana.

### IV.    PARTIES

12.     Plaintiff NATIVE ECOSYSTEMS COUNCIL is a non-profit Montana corporation with its principal place of business in Three Forks, Montana. Native Ecosystems Council is dedicated to the conservation of natural

resources on public lands in the Northern Rockies. Its members use and will continue to use the Helena National Forest for work and for outdoor recreation of all kinds, including fishing, hunting, hiking, horseback riding, and cross-country skiing. The Forest Service's unlawful actions adversely affect Native Ecosystems Council's organizational interests, as well as its members' use and enjoyment of the Helena National Forest, including the Project Area. Native Ecosystems Council brings this action on its own behalf and on behalf of its adversely affected members.

13.   Plaintiff ALLIANCE FOR THE WILD ROCKIES is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The Alliance has over 2,000 individual members, many of whom are located in Montana. Members of the Alliance observe, enjoy, and appreciate Montana's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Project Area in the Helena National Forest. Alliance's members' professional and recreational activities are directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems as set

forth below. Alliance for the Wild Rockies brings this action on its own

behalf and on behalf of its adversely affected members

14.     Defendant LEANNE MARTEN is the Regional Forester for the Northern

Region/Region One of the U.S. Forest Service, and in that capacity is

charged with ultimate responsibility for ensuring that decisions made at each

National Forest in the Northern Region, including the Helena National

Forest, are consistent with applicable laws, regulations, and official policies

and procedures.

15.     Defendant UNITED STATES FISH & WILDLIFE SERVICE (FWS) is an

administrative agency within the U.S. Department of Interior, and is

responsible for conservation and recovery of terrestrial wildlife species

listed under the Endangered Species Act.

16.     Defendant UNITED STATES FOREST SERVICE (Forest Service) is an

administrative agency within the U.S. Department of Agriculture, and is

responsible for the lawful management of our National Forests, including

the Helena National Forest.

## V.     FACTUAL ALLEGATIONS

17.     The Forest Service signed the Decision Memorandum (Decision Memo)

authorizing the Willow Creek Project on May 29, 2019.

18.     The Project Area is located in the Blackfoot River drainage on the north

and Nevada Creek drainage on the south, approximately five miles

southwest of Lincoln, Montana.

19.   The Project Area lies entirely within the Helena National Forest. *Id*.

20.   The Project activities are proposed on approximately 2,140 acres within

the Project Area, which is 10,181 acres.

21.   The Project Area is immediately adjacent to the Nevada Mountain and

Ogden Mountain IRAs.

22.   Logging units within the Project Area are adjacent to the border of the

Nevada Mountain IRA and are in unroaded areas.

23.   The Project was approved as part of an "insect and disease treatment

program" in accordance with Healthy Forest Restoration Act [HFRA]. 16

U.S.C. § 6591 *et seq*. as amended by Section 8204 of the 2014 Farm Bill.

24.   The Project was categorically excluded from NEPA pursuant to 16 U.S.C.

§ 6591b(a), which provides that certain projects may be categorically

excluded from NEPA's requirement that agencies prepare an

Environmental Impact Statement for "major Federal actions significantly

affecting the quality of the human environment."

25.   16 U.S.C. §6591a and 16 U.S.C. §6591b were enacted as part of the Farm

Bill, which creates a Categorical Exclusion (CE) from NEPA ("Farm Bill

CE").

26.    16 U.S.C. §6591a, titled, "Designation of treatment areas," provides the Chief of the Forest Service with mechanisms for designating "landscape-scale areas" to address tree mortality from insects or disease in national forests. 16 U.S.C. §6591a(b).

27.    In the designated treatment areas, the Forest Service can "carry out priority projects . . . to reduce the risk or extent of, or increase the resilience to, insect or disease infestation in the areas." 16 U.S.C. §6591a(d)(1).

28.    Projects may qualify for a NEPA categorical exclusion under the Farm Bill if they meet certain provisions of 16 U.S.C. §6591b.

29.    After the request of Montana Governor Steve Bullock to designate a portion of Montana's forests under the Farm Bill, Forest Service Chief Thomas Tidwell designated 4,955,159 acres as "threatened landscapes" in Montana (Designation).

30.    No NEPA analysis was conducted prior to the Forest Service Designation of 4,955,159 Montana acres as "threatened landscapes."

31.    The Project Area is part of that Designation.

32.    The Project was subject to scoping and public notice.

33.    The Forest Service has determined that "Scoping is required for all Forest Service proposed actions, including those that would appear to be categorically excluded . . . Scoping is important to discover information

that could point to the need for an EA or EIS versus a CE. Scoping is the means to identify the presence or absence of any extraordinary circumstances that would warrant further documentation in an EA or EIS. Scoping should also reveal any past, present, or reasonably foreseeable future actions with the potential to create uncertainty over the significance of cumulative effects." FSH §1909.15, Ch. 31.3.

34.   Projects under the Farm Bill CE may be carried out in accordance with sections 6514, 6515, and 6516 of HFRA (16 U.S.C. § 6501 et seq.) 16 U.S.C. §6591a(d)(3).

35.   HFRA §6514 notes: "Except as otherwise provided in this subchapter, the Secretary shall conduct authorized hazardous fuel reduction projects in accordance with (1) the National Environmental Policy Act of 1969 [42 U.S.C. 4321 et seq.] . . . ." 16 U.S.C. §6514(a)(1).

36.   The Scoping Notice states, "In initial review of the proposal with applicable design features and mitigation, it appears the project would not have extraordinary circumstances which would warrant further analysis and documentation in an environmental assessment or environmental impact statement."

37.   The Forest Service predetermined the Project would be categorically excluded prior to determining whether the Project's impacts were

insignificant.

38.     The Decision Memo states, at page 14, "The project with applicable design features and mitigation, has had additional review for and was determined to not have extraordinary circumstances as defined at **36 CFR 220.6(b)**; which could warrant further analysis and documentation in an environmental assessment or environmental impact statement."

39.     The Decision Memo states, at page 13,  "In review of the project case file, resource specialist information and documentation I have determined there is no uncertainty of past management activity impacting cumulative effects or additionally does not have a level of extraordinary circumstances that would warrant further documentation in an Environmental Assessment or Environmental Impact Statement.

40.     FWS considers the management of roads to be one of the most important variables in managing grizzly bear habitat.

41.     The presence of roads in grizzly bear habitat negatively impacts the survival of grizzly bears. The presence of road and associated human activities negatively impact grizzly bears by displacing them from important habitats and lowering their survival rates during the non-denning season.

42.     The Forest Service acknowledged this threat in 1995 by amending the

Helena Forest Plan with Amendment 19, which set specific limits on the density of roads in grizzly bear habitat.

43.    Amendment 19 also required that the first 200 to 600 feet of roads had to be treated to preclude use as a motorized or non-motorized travel way in order to count as reclaimed to meet the density standards of Amendment 19.

44.    Amendment 19 required that the reclaimed roads could "no longer function as a road again."

45.    Even the presence of closed roads in grizzly bear habitat negatively impacts the survival of grizzly bears.

46.    In December 2018, the Forest Service amended the Helena National Forest Plan with amendments to incorporate habitat management direction for the Northern Continental Divide Ecosystem grizzly bear population.

47.    The December 2018 amendments added a "Zone 1" area to grizzly bear management on the Helena National Forest.

48.    Grizzly bears are present in the Willow Creek Project area.

49.    The Willow Creek Project is located in Zone 1.

50.    Pursuant to NCDE-DC-WL-02, grizzly bear habitat in Zone 1 "contributes to sustaining the recovery of the grizzly bear population in the NCDE and contributes to connectivity with neighboring grizzly bear recovery zones."

51.   The December 2018 amendment NCDE-HNF Zone 1-STD-01 provides that in Zone 1, "there shall be no net increase above the baseline in density of motorized routes (roads and trails) open to public motorized use during the non-denning season on NFS lands. Open motorized route density is calculated by dividing the total miles of open motorized routes on NFS lands in zone 1 by the total square miles of NFS land area in the same area."

52.   NCDE-HNF Zone 1-STD-01 does not apply to "motorized use by agency personnel or others authorized by the appropriate agency personnel."

53.   NCDE-HNF Zone 1-STD-01 does not apply to temporary roads.

54.   NCDE-HNF Zone 1-STD-01 does not apply to updated or improved road data without an actual change on the ground.

55.   NCDE-HNF Zone 1-STD-01 does not apply to motorized use for mining or oil and gas activities.

56.   A "temporary road" is a road "necessary for emergency operations or authorized by contract, permit, lease, or other written authorization that is not a forest road and that is not included in a forest transportation atlas (36 CFR §212.1). In the Northern Continental Divide Ecosystem primary conservation area, temporary roads will meet the definition of impassable when no longer needed."

57. An "impassable" road is a road "that has been treated in such a manner that the road is blocked and there is little resource risk if road maintenance is not performed on a regular basis (self-maintaining). These roads are not counted in the total motorized route density as long as the road (generally the first 50 to 300 feet) has been treated to make it inaccessible to wheeled motorized vehicles during the non-denning season."

58. "Roads may become impassable due to a variety of causes, including but not limited to one or more of the following: natural vegetation growth, road entrance obliteration, scarified ground, fallen trees, boulders, or culvert or bridge removal."

59. As a practical matter, human use is unlikely to dissipate on roads deemed "impassable" under the December, 2018 amendments. The amendments seek only to hinder wheeled motorized users, not non-motorized users.

60. Access by other than wheeled motorized vehicles can also affect grizzly bear habitat security, especially if non-motorized users—including hikers, hunters, and mountain bikers—have easy access to areas that were previously remote from human disturbance.

61. There is no requirement for temporary roads to be reclaimed or made impassable in Zone 1 grizzly bear habitat on the Helena National Forest.

62. The December, 2018 amendments allow new road construction without

requiring the Forest Service to decommission or obliterate existing roads.

63.     Under the Blackfeet Travel Plan, "Decommissioning a road means
        physically deconstructing it and/or administratively removing it from the
        Forest Service transportation system. It can be accomplished with actual
        on-the-ground road work, or it can be accomplished with just an
        administrative change to the road's status on the transportation system. . . .
        If no hydrologic problems or risks of mass failure are present, and/or the
        road is grown in to the point that use is not possible, decommissioning may
        entail barricading the road to restrict motorized access and removing its
        status as a classified road from the transportation system. In some cases, a
        barrier may not even be necessary."

64.     Forest Service has moved away from a policy position —
        Amendment 19 — that it has stated is the best available science and is
        necessary for the conservation and recovery of grizzly bears. The Forest
        Service has instead adopted the December, 2018 amendments with plan
        components that are not based on the best available science
        because they eschew necessary restrictions on road densities without
        explaining why the Forest Service has made this policy decision.

65.     The impact this changed management direction will have on grizzly bears
        is not analyzed in the Biological Assessment or Biological Opinion.

66.   The Biological Opinion for the amendments relies on the assumption that the population of grizzly bears was increasing.

67.   The Biological Opinion for the amendments does not consider the status of grizzly bears throughout the contiguous United States, or the importance of connectivity of various sub-populations, or how weakened road density standards affect the ability of grizzly bears in the Helena National Forest to serve as a source population for the rest of the contiguous United States.

68.   The Biological Opinion for the amendments does not take into account the changes in food sources or food availability for grizzly bears in the Helena National Forest or Northern Continental Divide Ecosystem since 2011.

69.   The Biological Opinion for the amendments does not take into account climate change impacts for grizzly bears in the Helena National Forest or Northern Continental Divide Ecosystem since 2011.

70.   The Biological Opinion for the amendments incidental take statement does not include a quantifiable take limit for effects to grizzly bears from road management.

71.   Canada lynx is a feline adapted to walking on snow.

72.   In Montana, snowshoe hares account for approximately 96% of biomass in the lynx diet.

73.    The primary food source for lynx in the Project Area is snowshoe hare.

74.   Lynx winter habitat is different than, and more limiting, than snowshoe hare winter habitat.

75.   Lynx populations are declining in Montana.

76.   Lynx populations are declining on the Helena National Forest.

77.   The Project Area is designated lynx critical habitat.

78.   Any Forest Service project in designated critical habitat is required to contribute to the recovery of the species, not just the continued survival of the species.

79.   Climate change is a threat to the continued existence of lynx on the Helena National Forest.

80.   The presence of roads on the landscape is a threat to the continued existence of lynx on the Helena National Forest and is detrimental to the recovery of the species.

## VI.    CLAIMS FOR RELIEF

### COUNT 1

**The Forest Service failed to analyze cumulative impacts of the Project, in violation of NEPA.**

81.   All previous paragraphs are incorporated by reference.

82.   NEPA requires the Forest Service address cumulative effects of its proposed action.

16

83.   Categorical exclusions are actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in NEPA procedures adopted by a Federal agency.

84.   Before implementing a categorical exclusion from environmental review under NEPA, the agency must document that the action to be undertaken is insignificant, because the threshold question in a NEPA case is whether the proposed project will significantly affect the environment, thereby triggering the requirement for an environmental impact statement.

85.   Defendants made a determination to categorically exclude the Project during scoping and without determining whether the Project would have significant impacts.

86.   A determination of significance requires the agency to consider "[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts." 40 C.F.R §1508.27(b)(7).

87.   The Forest Service failed to analyze cumulative impacts for the Project in violation of NEPA.

88.   The Forest Service was required to analyze the cumulative impacts of the Project prior to determining that the CE was the appropriate pathway to take but failed to do so here.

89.    The Forest Service's failure to analyze cumulative impacts of the Project

       violates NEPA and the APA.

## COUNT 2

### NEPA and 16 USC §6591a & §6591b Violations

90.    All previous paragraphs are incorporated by reference.

91.    The Willow Creek Project is designated a Categorical Exclusion under 16

       USC §6591a and 16 USC §6591b.

92.    In order to be designated under §6591b, a project must "decommission all

       temporary roads within three years and "establish" no permanent roads.

93.    The Willow Creek Project intends to build 3.7 miles of temporary roads,

       reconstruct 2.9 miles of temporary roads, recondition 5.2 miles of

       permanent roads, and reconstruct 14.4 miles of permanent roads.

94.    Post-project motorized access conditions are expected to comply with the

       Blackfoot Travel Plan.

95.    "Permanent road" is not defined by the Blackfoot Travel Plan or the

       HFRA.

96.    Pursuant to the Blackfoot Travel Plan, decommissioned roads can stay on

       the landscape without being obliterated. Motorized access to these roads

       can be restricted with use of an administrative closure, barriers, barricades,

       or vegetative growth.

97.  Administrative closures and barriers are not effective road closures to restrict motorized access, thus resulting in these purported temporary roads actually being permanent roads on the landscape.

98.  Because the Willow Creek Project will not actually remove the "temporary" roads from the landscape, it is not a project that qualifies for a categorical exclusion under 16 USC §6591a and 16 USC §6591b.

99.  Pursuant to 16 USC §6591a(e) and 16 USC §6591b(1)(A), projects designated under this section must maximize the retention of old growth and large trees.

100.  The Forest Service has not designated a minimum diameter size for tree removal in the Willow Creek Project; therefore there is no basis for determining whether "large trees" will be retained on the landscape, and therefore arbitrary and capricious.

101.  Because the Willow Creek Project does not have any process for retaining "large trees," it is not a project that qualifies for a categorical exclusion under 16 USC §6591a and 16 USC §6591b.

102.  The Willow Creek Project uses the Tri-County Regional Community Wildfire Protection Plan WUI designation as basis for the project's qualification under §6591a and §6591b.

103.  The Tri-County Regional Community Wildfire Protection Plan WUI

designation is based on a population density of greater than 28 people per square mile, not 250 people per square mile.

104.   HFRA requires that an at-risk community for purposes of designating wildland-urban interface areas is an interface community or "a group of homes and other structures with basic infrastructure and services (such as utilities and collectively maintained transportation routes) within or adjacent to Federal land."

105.   An interface community generally has three structures per acre and a population density of 250 or more people per square mile.

106.   The development density in an intermix community ranges from structures very close together to one structure per 40 acres and a population density of 28-250 people per square mile.

107.   The Tri-County WUI applies the intermix community for its WUI designation, not the interface designation.

108.   The Tri-County WUI designation does not comport with the requirements of the HFRA, thus is not a proper basis for designation for a categorical exclusion under 16 USC §6591b.

109.   Because the Willow Creek Project does not qualify for a categorical exclusion under 16 USC §6591a and 16 USC §6591b, the Forest Service violates NEPA.

## COUNT 3

## ESA Violations

110.  All previous paragraphs are incorporated by reference.

111.  The ESA requires the Forest Service to ensure that the actions it takes will
      not jeopardize the survival of threatened grizzly bears. 16 U.S.C. §
      1536(a)(2). To meet this requirement, the Forest Service must consult with
      FWS about proposed actions that may adversely affect grizzly bears. *Id*.; 50
      C.F.R. §402.14(a). During such consultation, FWS must rationally
      determine whether the Forest Service's action will jeopardize grizzly bear
      survival and recovery, based on a consideration of all relevant factors.

112.  The Forest Service violates the ESA if it approves or implements an action
      in reliance on a legally flawed biological opinion or fails in its approval or
      implementation decision to discuss information that would undercut the
      biological opinion's conclusions.

113.  The December, 2018 amendments to the Helena Forest Plan weaken grizzly
      bear habitat protections by allowing unfettered road construction in
      occupied grizzly bear habitat without commensurate road obliteration. This
      is a significant departure from the Amendment 19 standards, which required
      that reclaimed roads could no longer function as a road.

114.    The Biological Opinion on the amendments does not acknowledge or analyze these potential impacts to grizzly bears.

115.    The Biological Opinion on the Willow Creek Project does not acknowledge or analyze these potential impacts to grizzly bears.

116.    Helena National Forest Plan Standard NCDE-HNF Zone 1-STD-01 violates ESA because it allows "temporary" roads to proliferate on the landscape.

117.    FWS failed to make a rational determination based on a consideration of all relevant factors whether the December, 2018 amendments will jeopardize the survival of grizzly bears and lynx on the Helena National Forest.

118.    FWS failed to make a rational determination based on a consideration of all relevant factors whether the Willow Creek Project will jeopardize the survival of grizzly bears and lynx on the Helena National Forest.

119.    The Willow Creek Project does not contribute to the recovery of lynx in designated lynx critical habitat, in violation of ESA.

120.    The Biological Opinion for the December, 2018 amendments and amendments relying on that Biological Opinion are arbitrary, capricious, and not in accordance with law, and should be set aside pursuant to the ESA and APA.

121.    The Biological Opinion for the Willow Creek Project and the Decision Memo relying on that Biological Opinion are arbitrary, capricious, and not

in accordance with law, and should be set aside pursuant to the ESA and APA.

## COUNT 4

### ESA Violations

122.  All previous paragraphs are incorporated by reference.

123.  The ESA requires the Forest Service and FWS to consider the direct and indirect effects of an action on a listed species and designated critical habitat, together with the effects that are interrelated and interdependent upon that action. 50 CFR §402.02.

124.  The Willow Creek Project Area has resident Canada lynx and resident grizzly bears, both listed for protection under the ESA.

125.  Timber management projects approved under 16 USC §6951a and 16 USC §6951b are proliferating on the landscape in occupied grizzly bear and Canada lynx habitat, including designated lynx critical habitat.

126.  These various Farm Bill projects are interrelated. ESA requires that the direct and indirect effects of these various Farm Bill projects must be analyzed and added to the environmental baseline.

127.  Federal Defendants have failed to analyze and consider the direct and indirect effects of the Willow Creek project and its interrelated projects on grizzly bear, lynx, and lynx critical habitat, in violation of ESA.

## VIII. RELIEF REQUESTED

For all of the above-stated reasons, Plaintiffs request that this Court award the following relief:

A. Declare that the Willow Creek Project and the 2018 amendments to the Helena Forest Plan, as approved, violate the law as alleged above;

B. Vacate the decisions and remand to the agencies until such time as the agencies demonstrate to this Court that they have adequately complied with the law;

C. Set aside the Willow Creek Project Decision Memorandum and Categorical Exclusion and enjoin implementation of the Willow Creek Project;

D. Set aside and vacate relevant and appropriate portions of the December, 2018 amendments to the Helena Forest Plan pending compliance with law;

E. Set aside and vacate the Biological Opinion for the Willow Creek Project and the December, 2018 amendments to the Helena Forest Plan;

C. Award Plaintiffs their costs, expenses, expert witness fees, and reasonable attorney fees; and

F. Grant Plaintiffs any such further relief as may be just, proper, and equitable.

Respectfully submitted this 26th day of August, 2019.

Kristine Akland
AKLAND LAW FIRM, PLLC

Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER,
PC

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC


Attorneys for Plaintiffs